# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TAMEALA JONES, | ) | |
| for B.J., a Minor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09CV45 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Tameala Jones, brought this action on behalf of her minor child, B.J., pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Child Supplemental Security Income ("SSI") payments under Title XVI of the Act. The Court has before it the certified administrative record and the parties have filed cross-motions for judgment.

## PROCEDURAL HISTORY

Plaintiff applied for SSI payments on behalf of B.J., alleging a disability onset date of December 12, 1999. (Tr. 71-73.)[1] The application was denied initially and upon reconsideration. (Tr. 50-53, 66-69.) Plaintiff then requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 36), which she and her child attended, along with their attorney (Tr. 274-97). The

---

[1] Transcript citations refer to the administrative record.

ALJ ruled that B.J. was not disabled under the Act (Tr. 14) and the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion Defendant's final decision (Tr. 3-6).

In rendering this disability determination, the ALJ made the following findings later adopted by Defendant:

> 1. The claimant . . . was a preschooler on October 26, 2005, the date the application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).
>
> 2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.924(b) and 416.972).
>
> 3. The claimant has the following severe impairment: learning disorder (20 CFR 416.924(c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).
>
> 5. The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926(a)).

(Tr. 14.)

The ALJ therefore determined that B.J. did not have a "disability," as defined in the Act. (Tr. 21.)

## **DISCUSSION**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch,

-2-

495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and

-3-

was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

"A claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981) and a child under the age of 18 qualifies as disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitation, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," 20 C.F.R. § 416.906. In resolving such a claim, the ALJ must follow a three-step sequential evaluation process to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; and (3) has an impairment that meets or either medically or functionally equals a listed impairment. 20 C.F.R. § 416.924.

## **Assignments of Error**

In the present case, the ALJ found that B.J., who has never engaged in substantial gainful activity, met the burden at step one. (Tr. 14.) At step two, the ALJ further determined that B.J. suffered from only one severe impairment, a "learning disorder." (Id.) The ALJ then concluded at step three that said impairment, both alone and in combination with B.J.'s non-severe impairments, failed to meet, medically equal, or functionally equal a listed impairment. (Id.) Plaintiff now argues that: (1) "[t]he ALJ erred in failing to specifically consider whether [B.J.] meets or equals Listing 112.05D" (Docket Entry 14 at 3); and (2) "[t]he ALJ

-4-

erred in failing to find, as a matter of law, that [B.J.] meets Listing 112.05D" (Docket Entry 14 at 7).

"In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986). More specifically, when an ALJ finds that a claimant has a severe impairment and the record contains evidence of related "symptoms [that] appear to correspond to some or all of the requirements of [a listing, the ALJ must] . . . explain the reasons for the determination that [the claimant's severe impairment] did not meet or equal a listed impairment." Id.

In this case, the ALJ found that Plaintiff had a severe impairment in the form of a "learning disorder." (Tr. 14.) Plaintiff has not come forward with any argument or authority that an ALJ's finding that a child has a "learning disorder" would require the ALJ to undertake a review of whether the child met or equaled one of the "Mental Retardation" listings for children, such as Listing 112.05D. (See Docket Entry 14 at 4-11.) To the contrary, Plaintiff has contended that B.J.'s "learning disorder" constitutes an "other mental impairment," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05D, separate from the "significantly subaverage general intellectual functioning," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05, which serves as the foundation for all "Mental Retardation" listings. (See Docket Entry 14 at 8.) Defendant, however, appears to concede that the ALJ had an obligation to

consider whether B.J. met or equaled Listing 112.05D (see Docket Entry 16 at 5-19), perhaps because, "[i]n [the] application for benefits, [B.J.] alleged mental impairments that fell . . . within the confines of . . . mental development" (id. at 6), and because the record before the ALJ established that B.J. "satisfied the first requirement of [Listing 112.05D based on B.J.'s] receipt of an IQ score of 63" (id. at 7).

Accepting, as Defendant apparently does, that the ALJ had an obligation in this case to evaluate whether B.J. met or equaled Listing 112.05D, Fourth Circuit authority dictates that "[t]he ALJ should have identified the relevant listed impairments. He should then have compared each of the listed criteria to the evidence of [B.J.'s] symptoms." Cook, 783 F.2d at 1173. In this case, the ALJ's decision recites that B.J. "d[id] not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . [or] that functionally equals the listings." (Tr. 14 (internal citations omitted).) It then reviews information from B.J.'s school records, as well as testimony at the hearing (see Tr. 15-16), and sets out a detailed "domain analysis" (see Tr. 16-21).[2]

---

[2] "Domain analysis considers the child's age-appropriate functioning in relation to: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving around and manipulating objects; (5) caring for oneself; and (6) health and physical well being." Neal ex rel. Walker v. Barnhart, 405 F.3d 685, 689 (8th Cir. 2005). An ALJ must conduct such analysis to decide if an impairment that fails to meet or medically equal a listing nonetheless causes "limitations that functionally equal the listings," 20 C.F.R. § 416.926a(a).

-6-

Defendant acknowledges that, in the foregoing discussion, "the ALJ did not expressly articulate which listing he considered" (Docket Entry 16 at 6); however, Defendant asserts that "the ALJ set forth an analysis of the record medical evidence, which made it clear he was considering Listing 112.05D . . . [by] highlight[ing] the aspects of the record related to [B.J.'s] performance in school, [B.J.'s] IQ test results, and [B.J.'s] ability to interact with students" (id. at 6-7 (citing Tr. 15-16)).

Under these circumstances, "the duty of explanation will be satisfied when the ALJ presents '[a reviewing court] with findings and determinations sufficiently articulated to permit meaningful judicial review,' which must include specific reference to the evidence producing [the ALJ's] conclusion." Wyatt v. Bowen, No. 89-2943, 887 F.2d 1082 (table), 1989 WL 117940, at *4 (4th Cir. Sept. 11, 1989) (unpublished) (quoting DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983), and citing Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985)). In other words:

> As a general rule, [courts] have held that an ALJ's failure to adequately explain his factual findings is not a sufficient reason for setting aside an administrative finding where the record supports the overall determination. However, [courts] have held that a remand is appropriate where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit [a court] to conclude that substantial evidence supports the Commissioner's decision.

Scott ex rel. Scott v. Astrue, 529 F.3d 818, 822 (8th Cir. 2008) (internal citations and quotation marks omitted) (remanding case where ALJ failed to explain why claimant did not satisfy Listing

-7-

112.05D and record "contain[ed] inconsistencies on this issue"); see also Morgan v. Barnhart, 142 Fed. Appx. 716, 723 & n.6 (4th Cir. 2005) (applying harmless error standard in Social Security appeal); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result."); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected.").

The Court thus should evaluate whether factual findings in the ALJ's decision provide a sufficient basis to sustain the ALJ's implicit determination that Plaintiff did not meet or equal Listing 112.05D. In that regard, the Court should begin by noting that the introduction to the childhood mental disorders listings states:

> Listing 112.05 (Mental Retardation) contains six sets of criteria. If an impairment satisfies the diagnostic description in the introductory paragraph and any one of the six sets of criteria, we will find that the child's impairment meets the listing. For listings 112.05D and 112.05F, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it causes more than minimal functional limitations, i.e., is a "severe" impairment(s), as defined in § 416.924(c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(A). To meet Listing 112.05D, Plaintiff thus first must prove that B.J.'s mental impairment "satisfies the diagnostic description in the

introductory paragraph," id., which requires a showing of "significantly subaverage general intellectual functioning with deficits in adaptive functioning," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05. Plaintiff then must offer satisfactory proof of both criteria set out in paragraph D: (1) a "valid verbal, performance, or full scale IQ of 60 through 70," and (2) an additional impairment, i.e., "a physical or other mental impairment imposing an additional and significant limitation of function[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05(D).

In arguing that the ALJ correctly concluded that Plaintiff did not meet Listing 112.05D, Defendant focuses only on the last of the foregoing requirements, i.e., proof of "a physical or other mental impairment imposing an additional and significant limitation of function," id., beyond the claimant's "significantly subaverage general intellectual functioning," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05. (See Docket Entry 16 at 7-19.) To come within that final prong of Listing 112.05D, such "physical or other mental impairment[s]," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05(D), must constitute "'severe' impairment(s), as defined in § 416.924(c)," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00A. Under that cross-referenced section, an impairment (or impairments) must represent more than "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c).

-9-

The ALJ found that B.J. had only one severe impairment: a "learning disorder." (Tr. 14.) Plaintiff argues that this "learning disorder" is distinct from B.J.'s "significantly subaverage general intellectual functioning," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05, and thus qualifies as an "other mental impairment," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05(D), sufficient to fulfill the final requirement of Listing 112.05D. (Docket Entry 14 at 7-8.) Alternatively, Plaintiff contends that the ALJ erred by failing to find that B.J.'s speech disorder and/or B.J.'s limitations in "functional" areas related to the ALJ's "domain analysis" constituted "physical or other mental impairment[s]," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05(D), that satisfied Listing 112.05D's last prong. (Id. at 8-11.)

The "functional" deficits related to "domain analysis" that Plaintiff identifies as "physical or other mental impairment[s]," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05(D), actually represent matters relevant to the question of whether B.J.'s general level of intellectual functioning "results in limitations that functionally equal the listings" even if B.J. cannot otherwise meet a listing. 20 C.F.R. § 416.926a(a). Such considerations thus provide <u>an alternative to meeting</u> Listing 112.05D, <u>not</u> matters on which Plaintiff can rely <u>to meet</u> Listing 112.05D. Accordingly, B.J.'s alleged "functional" limitations cannot serve as "physical or other mental impairment[s]," 20 C.F.R. Pt. 404, Subpt. P, App.

-10-

1, § 112.05(D), for purposes of determining whether B.J. met the final requirement of Listing 112.05D.

Whether B.J.'s speech disorder constitutes a "physical or other mental impairment" under the last prong of Listing 112.05D poses a more difficult question. The record confirms that B.J. suffers from a speech disorder and began regular speech therapy shortly after starting school. (See, e.g., Tr. 14, 189-91, 195.) At that time, B.J.'s teacher reported that B.J. had difficulty communicating in class. (Tr. 190.) Plaintiff also testified at the hearing that, although she could understand B.J., others could not. (Tr. 14.) However, the ALJ noted that B.J. "answered all questions at the hearing with clear and understandable speech." (Id.) More importantly, B.J.'s school records indicate steady improvement in B.J.'s mild articulation disorder as a result of ongoing therapy. (Tr. 81-82.) Impairments controlled by treatment generally do not constitute "severe" impairments and thus "cannot qualify as the required additional and significant impairment under [Listing 112.05D]." Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003); accord Cacere v. Commissioner of Soc. Sec., 189 Fed. Appx. 59, 63 (3d Cir. 2006); Gibbs v. Barnhart, 130 Fed. Appx. 426, 431-32 (11th Cir. 2005). The Court therefore should not conclude that the ALJ reversibly erred by failing to treat B.J.'s speech disorder as a severe, "physical or other mental impairment," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05(D).

The foregoing analysis still leaves the question of whether the record supports a finding that B.J.'s "learning disorder" failed to qualify as a severe, "other mental impairment," id., separate from any "significantly subaverage general intellectual functioning," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05. On this point, Defendant admits that, in some instances, "a learning disorder and low IQ may be considered separate impairments . . . ." (Docket Entry 16 at 8 (citing Diagnostic and Statistical Manual of Mental Disorders 47 (Text Rev. 4th ed. 2000), for proposition that "[a] Learning Disorder . . . can be diagnosed in an individual with Mental Retardation if the specific deficit is out of proportion to the severity of the Mental Retardation").) In this case, however, Defendant contends that B.J.'s learning disorder and intellectual level do not constitute separate impairments. (See id. at 8-9.)

Assessment of whether a learning disorder caused a claimant additional and significant limitations beyond that associated with the claimant's general level of intellectual functioning alone "should be done in the first instance by the ALJ with the assistance of a medical professional." Williams v. Astrue, No. 07 Civ 4134, 2008 WL 4755348, at *12 (S.D.N.Y. Oct. 27, 2008) (unpublished). In the present case, the ALJ's decision contains no findings regarding this issue. (See Tr. 14-21.) Because the ALJ's decision does not permit meaningful judicial review on the question of whether B.J. has a learning disorder that constitutes a severe

"other mental impairment," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05(D), in addition to any "significantly subaverage general intellectual functioning," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05, the Court should remand this case for further proceedings.

As a final matter, Plaintiff also apparently seeks reversal of the ALJ's disability determination on the ground that the ALJ reached conclusions unsupported by substantial evidence in connection with the "domain analysis" (i.e., the evaluation of whether B.J. had impairments that, although insufficient to meet Listing 112.05D, functionally equaled that Listing, see 20 C.F.R. § 416.926a(a)). (See Docket Entry 14 at 5-6.) A child's impairments functionally equal a listing if the child has "'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). A "marked" limitation "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i) (emphasis added).[3] The six relevant domains of functioning consist of: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for [one]self; and (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1).

---

[3] Plaintiff does not contend that B.J. has an "extreme" limitation in any domain. (See Docket Entry 14 at 5-6, 8-11.)

Here, the ALJ found that B.J. has a marked limitation in acquiring and using information, but less-than-marked limitations in the other five domains. (See Tr. 14-21.) Plaintiff contends that the ALJ should have found that B.J. also has marked limitations in (1) attending and completing tasks (Domain ii) and (2) interacting and relating with others (Domain iii). (See Docket Entry 14 at 9, 11.) A careful review of the record confirms that substantial evidence supports the ALJ's decision on these points.

B.J.'s limitation in the second domain presents the closer question of the two domains at issue. As the ALJ noted:

> This domain considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the pace at which he performs activities and the ease of changing activities[.] 20 C.F.R. 416.926a(h).
>
> . . . .
>
> Some examples of difficulty children could have in attending and completing tasks are: (i) is easily startled, distracted, or over-reactive to sounds, sights, movements, or touch; (ii) is slow to focus on, or fails to complete, activities of interest (e.g., games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; or (v) requires extra supervision to remain engaged in an activity.

(Tr. 17-18.)

The record reflects that B.J. suffers some limitation in this domain. For example, school records document B.J.'s separate testing and instructional needs. (Tr. 206-07, 282-83.) In addition, at least one school psychologist noted that B.J. has

"trouble following directions, and abandons difficult tasks" (Tr. 195) and B.J.'s kindergarten teacher, Megan Lis, reported "obvious" problems in B.J.'s abilities to focus, carry out multi-step instructions, and complete class and homework assignments on time and without careless mistakes (Tr. 118). However, as Defendant correctly points out, "having a difficulty in a functional area does not mean the limitation is marked or extreme." (Docket Entry 16 at 16 (citing 20 C.F.R. § 416.926a(b)(1)).)

Notably, Ms. Lis's evaluation fails to report any part of this domain in which B.J. has "serious" or "very serious" problems (despite the availability of those options). (Tr. 118.) Moreoever, based on an independent review of the evidence, the state consultant found no serious limitations in this domain. (Tr. 214.) Under these circumstances, the Court should not conclude that the ALJ reversibly erred by failing to find that B.J.'s difficulty attending and completing tasks "interferes seriously with [the] ability to independently initiate, sustain, or complete activities," 20 C.F.R. § 416.926a(e)(2)(i) (emphasis added).

The same holds true for the ALJ's conclusions regarding the third domain, interacting and relating with others. Plaintiff argues that "the ALJ's finding of 'no limitation' conflicts with the February 2006 'Report from Psychological Services,' which states that 'At times [B.J.] can provoke or aggravate classmates, in addition to crying easily and being overly sensitive.'" (Docket

Entry 14 at 6 (citing Tr. 195).) Again, however, the record need only contain evidence sufficient to support a finding of less-than-marked limitation to sustain the ALJ's ultimate conclusion and the existence of some difficulty in a functional area does not establish that the limitation qualifies as marked. See 20 C.F.R. § 16.926a(a) and (b)(1).

Significantly, Plaintiff testified that B.J. has no serious behavioral problems. (Tr. 290.) According to Plaintiff, at most, B.J. gets "a little frustrated because . . . [B.J.'s] not as quick as [B.J.'s friends] are." (Tr. 291.) Similarly, Ms. Lis's evaluation failed to identify any "serious" or "very serious" problems in this domain and, instead, reported only "obvious" problems with B.J.'s ability to use appropriate language, vocabulary, and grammar, and "slight" or "no" problems in other facets of interaction. (Tr. 119.) The record thus does not compel a finding that B.J. suffered a marked (i.e., serious) limitation in the third functional domain.

In sum, Plaintiff's challenge to the ALJ's domain analysis does not warrant reversal.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be **REVERSED** and that the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g), with direction to remand the matter to the ALJ for further consideration of whether B.J. meets the requirements of Listing 112.05D based on

the existence of a learning disorder that constitutes a severe "other mental impairment," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05(D), in addition to any "significantly subaverage general intellectual functioning," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05. Defendant's motion for judgment on the pleadings (Docket Entry 15) thus should be **DENIED** and Plaintiff's motion for judgment reversing the Commissioner (Docket Entry 13) should be **GRANTED IN PART AND DENIED IN PART**, in that the Court should decline Plaintiff's request for an immediate award of benefits.[4]

/s/ L. Patrick Auld

**L. Patrick Auld**

**United States Magistrate Judge**

Date: April 16, 2012

---

[4] "Under Fourth Circuit precedent, reversal without remand is only appropriate where: (1) the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard; and (2) reopening the record for more evidence would serve no purpose." Jones ex rel. Jones v. Astrue, 704 F. Supp. 2d 522, 536 (D.S.C. 2010) (citing Breeden v. Weinberger, 493 F.2d 1002, 1012 (4th Cir. 1974)). Under the circumstances of this case, the Court cannot conclude that "the record as a whole indicates that [Plaintiff] was disabled . . . [or that] reopening the record would serve no purpose," id. Moreover, this case differs from others in which courts ordered the immediate award of benefits on the ground that "there [we]re no inconsistencies in the record and further development is not required regarding the claim," id. Indeed, as set forth above, the instant record reveals the existence of an unresolved issue that the ALJ, not the Court, should address, at least initially, and which may require additional medical evidence.